Christian, J.,
delivered the opinion of the court.
The court is of opinion that there is no proof in the record to show, either from the relation of the parties or other circumstances, that the check for $500 in gold delivered by Ficklin to Mrs. Eugene Carrington was a gift to her. In order to declare such transaction a gift to the wife, and not an advancement or loan upon the credit of the husband, there must be proof that it was intended as a gift, and the relations of the parties and the circumstances of the transaction must be of such a character as to show that the money advanced was given to the wife voluntarily and without expectation that the husband would return the same, and that it was not advanced to the wife upon credit given to the husband.
There is a total absence of any such proof in this- record. The only facts we have- before us (and which were before the court below) are: that on the 1st day of April, 1865, B. F. Ficklin delivered to Mrs. Eugene *221 Carrington a check drawn by him on ¥m. M. Sutton & Co., bankers, in the city of Richmond, for the sum of $500 in gold, which cheek was paid on that day by said bankers to Mrs. Carrington; and the further fact, that at that time Eugene Carrington was in a foreign country. This is all. There is no proof that there was any relationship, or even intimate friendly relations, between Mr. Fieklin and Mrs. Carrington. All these may have existed, but if they did the defendant has failed to prove it. lxo such proof wras even tendered. "We have, therefore, the naked fact, that in the absence of her husband in a foreign country Mr. Fieklin delivered to Mrs. Carrington a check for $500, which was collected by her. From this naked fact it certainly cannot be inferred that Fieklin thereby intended to make Mrs. Carrington a present of this $500. But, on the other hand, from this fact alone, the inference would be certainly as strong that this amount, paid to the wife in the absence of the husband in another country, was an advancement to her upon the credit of the husband.
There is certainly no evidence tending to rebut the presumption that that advancement, made under the circumstances, was a loan, and not a gift. But there is evidence tending to show, if it does not conclusively show, that Carrington, after his return, recognized this advance by Fieklin to his wife as a debt, which he acknowledged his obligation to pay. A letter of Carrington’s is produced, bearing date November 15th, 1866, addressed to Major B. F. Fieklin, Exchange Hotel, Richmond, in which, after alluding to his pecuniary embarrassments and his efforts to relieve himself, he says: “But [I] will continue to make every effort to raise funds by some means, and will settle my account with you with the first money which I succeed in getting hold of.”
It was distinctly proved by Smoot, the only witness *222 whose deposition appears in the record, that this letter had reference to the money which Ficklin had advanced Mrs. Carrington. An effort was made, on cross-ex-animation, to show that this letter may have referred to other transactions, in reference to the sale of Confederate bonds in London, in which there was a claim asserted by Ficklin against Carrington. But in answer to the question, Did Mr. Carrington say that Mr. Ficklin had ever demanded this debt of him, and if so what did Mr. Cai’rington say in regard to it ? the witness answers: “ I remember Mr. Carrington saying to me that he had peceived a letter from B. F. Ficklin, to which he had replied, addressing his reply to Exchange Hotel, Richmond, both of w'hich letters had, alone, reference to this five-hundred-dollar gold matter.”
Same witness further proved that Carrington stated to him that “after his return to Richmond in the year 1865 his wife advised him that Mr. Sutton, either "William M. or P. T., of the firm of Sutton & Co., had called upon her during his absence and left with her $500, or a check for it, in gold, stating to her that he did so by direction of Major B. F. Ficklin; that he supposed that to he the transaction which constituted the basis of the claim or demand made by B. F. Ficklin on him through me in full of all demands, as he supposed the difference between gold and greenbacks, with interest up to that time added to the principal, would make about $1,000.” The same witness also proved that Carrington was willing to secure the ultimate payment of this amount by the execution of the necessary papers to hind his reversionary interest in certain property in the city of Richmond.
The court, therefore, is of opinion that there is not only a total absence of proof in the record to show that the payment of $500 in gold made by Ficklin through Wm. M. Sutton & Co. to the wife of Carrington, in his absence in a foreign country, was a gift to Mrs. Carring *223 ton, but there is conclusive proof to show that Carrington himself recognized this advance or loan to his wife, in his absence out of the country, as a debt of the highest obligation, which he was willing and anxious to secure.
The court is, therefore, of opinion that,upon the plea of non-assumpsit there ought to have been a judgment for the plaintiff in the court below.
But beside the plea of non-assumpsit there was a plea of the statute of limitations, and upon these two pleas and issues thereon the case was tried by the court, both parties waiving a jury.
' To the plea of the statute of limitations there was a replication in these words by the plaintiff:
“The said plaintiff says that he ought not to he barred by reason of anything by the said defendant in his second plea alleged, because he says that on the 1st day of April, 1865, when the said several promises and undertakings in the plaintiff’s declaration mentioned were made and entered into, and previous thereto, the defendant was and had been a resident of the state of Virginia, and that afterwards, to-wit: on or before the 15th day of November, 1866, the said defendant departed without the said state, and thereafter resided in the state of Maryland-, and thereby the said defendant obstructed the said B. F. Ficklin, deceased, in his lifetime, and the plaintiff since his death, in prosecution of his suit upon the said several promises and undertakings until the 13th day of June, 1874, when this suit -was instituted, and this he is ready to verify.”
To this special replication there was a special rejoinder by the defendant, which was rejected by the court. It being rejected, it is not necessary to he further noticed here. After being rejected, another rejoinder to the replication of the plaintiff to the plea of the statute of limitations was tendered and received by the court; which rejoinder is as follows:
*224 The defendant says that the plaintiff ought not, by reason °f anything in bis replication alleged, to have and his action against him because he says that by his removal from the state of Virginia and his residence in the state of Maryland, as in said replication is alleged, Jie ¿id not obstruct the said B. F. Ficklin in his lifetime, or his executor since his death, in the prosecution of suit upon the alleged cause of action in the declaration mentioned; and of this be puls himself on the country. To the filing of which the plaintiff, by his counsel, objected, but the court, overruling said objection, allowed said rejoinder to be filed; to which action of the court in overruling said objection the plaintiff, by his counsel, excepts, and prays that this his first bill of exceptions may be signed, sealed, and made a part of the record; which is accordingly done.
The replication by the plaintiff to the plea of the statute of limitations intended, manifestly, to affirm that the mere removal of the defendant beyond the limits of ,the state was an obstruction in itself to the prosecution of the plaintiff’s suit, and that in such case the statute of limitations would cease to be a bar to the plaintiff’s action. The rejoinder to this replication, which was permitted to be filed by the court, affirmed the proposition that the mere removal of the defendant beyond the limits of the state did not of itself obstruct the prosecution of the plaintiff’s suit; but it was necessary to show, on the part of the plaintiff, that he ivas in fact obstructed in consequence of such removal; so that, under these pleadings, the question we have to determine is, whether the removal of a defendant who has been a resident of the state beyond the limits of the state is sufficient of itself, under the statute, to be relied on as an obstruction to the prosecution of the plaintiff’s suit, or whether it is necessary for tine plaintiff to show that he was in fact obstructed by or in consequence of such removal.
*225 The solution of this question depends upon the true construction to be given to the statute law on this subject. The first act on this subject is found in 1 Rev. Code, 1819, p. 491, § 14. It provides that “if any defendant shall abscond or conceal himself, or by removal out of the country or the county where he resides when the cause of action accrued, or by any other indirect ways or means defeat or obstruct the plaintiff, then the defendant shall not be admitted to plead the statute of limitations.”
This statute, based upon the English statute of 4 Anne (see 3 Hen. Stat. at Large, 383-4), which provided that if at the time the cause of action accrued the person liable to it ivas beyond se is the plaintiff might bring his action within the usual period of limitation after his return.
The next act on the subject was in 1826, and was as follows: “If any defendant in any of the aforesaid actions shall abscond or conceal himself, or remove from this commonwealth, or by any other indirect ways or means defeat or obstruct any person,” &e., &e.
Hnder the revisal of 1849 the following section, -which changes the phraseology and the structure of the sentences contained in the former acts without changing O CD their meaning, is as follows:
“Where any such right as is mentioned in this chapter shall accrue against a person who had before resided in this state, if such person shall, by departing without the same, or by'absconding or concealing himself, or by any other indirect ways or means obstruct the prosecution of such right, the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted.”
We think it is plain that the change here made, which is simply placing the preposition “by” before the word *226 removing or “departing” from the state does not alter the meaning of the statute. It means the same thing to declare that “ if he remove ” from the state, or by other indirect means he obstruct the .prosecution of the suit, as to say “if, by removal or departing from the state, or other indirect means, he obstruct ” the prosecution of the suit, &c. The use of either phrase means in effect the same thing. Rep. of Rev. 746 and note; Wilkinson & Co. v. Holloway, 7 Leigh, 277; Marble's adm'r v. Burch's adm'r, 11 Gratt. 26. 'We think it is plain, looking to all the statutes above referred to, and noticing the modification in the structure of the sections without changing its meaning, that it was the purpose of the legislature to declare that where a party having been a resident of this state has gone beyond its limits, that such departing from the state should of itself be considered, during the period of such absence, an obstruction of the plaintiff’s right to prosecute his suit, and should not be counted in the period of the statute of limitations.
The court is, therefore, of opinion that upon the plea of the statute of limitations, as well as the plea of nonassumpsit, the judgment ought to have been for the plaintiff.
IJpon the whole case we are of opinion that the judgment of the circuit court should be reversed.
The judgment was as follow's :
The courtis of opinion, for reasons stated in writing and filed with the record, that the judgment of the said ■circuit court is erroneous. It is therefore considered by the court that the said judgment be reversed and annulled, and that the plaintiff in error recover against the defendant an error his costs by him expended in the prosecution of his writ of error here; and this court now proceeding to render such judgment as the said circuit *227 court ought to have rendered, it is considered by the court that the plaintiff in error recover against the defendant in error the sum of five hundred dollars with interest thereon, to be computed after the rate of six per centum per annum, from the 1st day of April, I860, until paid, together with his costs by him expended in the said circuit court; all of which is ordered to be certified to the said circuit court of the city of Richmond.
Judgment reversed.